UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANGELA LIBERATORE,

                              Plaintiff,                    5:15-CV-1483
                                                           (GTS)
v.

CAROLYN W. COLVIN
Acting Commissioner of Social Security,

                              Defendant.
_____

APPEARANCES:                                OF COUNSEL:

STANLEY LAW OFFICES                          STEPHANIE VISCELLI, ESQ.
  Counsel for Plaintiff
215 Burnet Avenue
Syracuse, NY 13203

U.S. SOCIAL SECURITY ADMIN.                  LORIE E. LUPKIN, ESQ.
OFFICE OF REG'L GEN. COUNSEL
– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Angela Liberatore

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on

the pleadings.  (Dkt. Nos. 13, 14.)  For the reasons set forth below, Plaintiff's motion for

judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is

granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on May 20, 1965.  Plaintiff has a high school education and has past work as a medical secretary and personal care assistant.  Generally, Plaintiff's alleged disability consists of vestibular neuritis, depression, anxiety, vertigo, migraines, panic attacks, confusion, hearing voices and music, memory loss, and mood swings.[1]

### B.    Procedural History

On November 30, 2012, Plaintiff applied for Disability Insurance Benefits.  Plaintiff's application was initially denied on March 25, 2013, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  On April 3, 2014, Plaintiff appeared in a hearing before the ALJ, Jennifer Gale Smith.  (Tr. at 33-69.)  On July 23, 2014, the ALJ issued a written decision, finding Plaintiff not disabled under the Social Security Act.  (Tr. 10-26.)  On November 10, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (Tr. 2-6.)

### C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law.  (Tr. 12-26.)  First, the ALJ found that Plaintiff meets the insured status requirements through December 31, 2017, and has not engaged in substantial gainful activity since June 30, 2012, the alleged onset date.  (Tr. 12.)  Second, the ALJ found that Plaintiff's

---

[1]    Plaintiff asserts in her memorandum of law that her alleged "severe psychiatric impairments," including dysthymic disorder associated with psychosis, predate her alleged onset date of June 30, 2012, by many years.  (Dkt. No. 13 at 3 [Plf.'s Memo. of Law].)  Plaintiff notes that, in a treatment note, her neurologist speculates that these impairments may be influencing her cognitive complaints.  (*Id.*; *accord,* Dkt. No. 9 at 485 [Tr. of Admin. Record ("Tr.")].)

2

history of vertigo, psychosis, anxiety, and depression constituted severe impairments, but that her thyroid cancer, headaches, and asthma were not severe impairments.[2] (Tr. 12-13.) Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (Tr. 14.) The ALJ considered Listings 2.07 (disturbance of labyrinthine-vestibular function), 12.03 (schizophrenic, paranoid and other psychotic disorders), 12.04 (affective disorders), and 12.06 (anxiety-related disorders). (*Id.*) Fourth, the ALJ found that Plaintiff

> has the residual functional capacity ["RFC"] to perform sedentary work as defined in 20 CFR 404.1567(a) except [Plaintiff] can only occasionally climb ramps and stairs, stoop, balance, kneel, crouch and crawl. [Plaintiff] cannot climb ladders, ropes or scaffolds. She cannot work at unprotected heights or in close proximity to dangerous machinery. [Plaintiff] cannot move mechanical parts of equipment. [Plaintiff] can only perform simple routine and repetitive tasks in a low stress environment that only has occasional changes in the work setting and involves occasional decision-making and judgment. Lastly, [Plaintiff] can only have occasional contact with co-workers, supervisors, and the public.

(Tr. 16.)[3] Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 24.) Sixth, the ALJ found that there are other existing jobs in the national economy that Plaintiff can perform. (*Id.*)

---

[2]     Plaintiff reported that she was diagnosed with thyroid cancer in 2013, that her thyroid gland was removed, and that she expected to continue to receive cancer treatment over the summer for the following two to three years. (Tr. 13.) Plaintiff did not discuss any limitations caused by her thyroid cancer at the hearing, and the only related symptom she identified was fatigue. (*Id.*)

[3]     Sedentary work requires the abilities to sit for six hours, stand and walk for two hours, and lift or carry up to ten pounds in an eight-hour workday. 20 C.F.R. § 404.1567(a); SSR 83-10, 1983 WL 31251 (1983).

Because this Decision and Order is intended primarily for the review of the parties, further discussion of the ALJ's decision and the relevant record evidence will be undertaken where necessary to address Plaintiff's arguments.

### D. The Parties' Briefings on Their Cross-Motions

Generally, in support of her motion for judgment on the pleadings, Plaintiff advances three arguments: (1) the ALJ did not apply appropriate legal standards in evaluating the medical opinion evidence and formulating the RFC because the ALJ (a) failed to afford controlling weight to, and consider pertinent regulatory factors regarding, the opinion of her primary care physician, John Michaels, M.D., and (b) improperly afforded great weight to a non-examining review physician who "did not review 12 [e]xhibits . . . and the bulk of the evidence" (Dkt. No. 13 at 4-7 [Plf.'s Memo. of Law]); (2) the ALJ failed to apply appropriate legal standards in assessing Plaintiff's credibility and failed to afford her substantial credibility in light of her "outstanding work history" (*id.* at 7-9); and (3) the vocational expert's testimony regarding the existence of other jobs in the national economy that Plaintiff can perform did not constitute substantial evidence of that fact because the hypothetical questions posed to the vocational expert were based upon an inaccurate and incomplete determination of Plaintiff's RFC (*id.* at 9-10).

Generally, in support of her motion for judgment on the pleadings, Defendant advances two arguments.  (Dkt. No. 14 [Def.'s Memo. of Law].)  First, argues Defendant, the ALJ's RFC determination is supported by substantial evidence for three reasons: (1) with regard to Plaintiff's first argument, the ALJ properly declined to give controlling weight to Dr. Michaels' opinion that Plaintiff could not perform unskilled sedentary work because (a) it was inconsistent with the

evidence of record, including his treatment notes and Plaintiff's statements concerning her abilities and daily activities, (b) it was inconsistent with the assessments of other acceptable medical sources, including state agency medical consultants Janet Forbes, M.D. and James Greco, M.D., and stage agency psychiatric consultant M. Apacible, M.D., (c) it was not supported by the findings of other treatment providers, including her neurologist, physical therapist, and psychiatrist, and (d) Plaintiff's mental health conditions date back to at least 2010 (i.e., while she was working and before her alleged disability onset), and, in any event, records reflect that her mood improved and her hallucinations stopped in 2013 (*id.* at 6-13); (2) Plaintiff has not identified any record evidence that the state agency physicians did not review and that would have compelled a different conclusion, and she does not allege that her condition worsened after the state agency consultants rendered their opinions (*id.* at 9); and (3) with regard to Plaintiff's second argument, the ALJ properly assessed Plaintiff's credibility, discussing the objective medical evidence in the record and Plaintiff's daily activities, symptoms, and the conservative nature of her course of treatment (*id.* at 14-17). Second, argues Defendant, with regard to Plaintiff's third argument, in light of the fact that the ALJ properly determined Plaintiff's RFC, the ALJ properly relied on the vocational expert's testimony in response to hypothetical questions at step five of the sequential analysis (*id.* at 17-18).

## II.     RELEVANT LEGAL STANDARDS

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if

the correct legal standards were not applied, or the determination was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. § 404.1520.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

**III.   ANALYSIS**

   **A.   Whether the ALJ Erred in Weighing the Medical Opinion Evidence in Determining Plaintiff's RFC**

After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendant's memorandum of law.  (Dkt. No. 14 at 6-14 [Def.'s Memo. of Law].)  To those reasons, the Court adds the following analysis.

RFC is defined as

> what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999); 20 C.F.R. § 404.1545(a).  "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work."  *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]).  The ALJ must consider medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms.  20 C.F.R. § 404.1545(b)-(e).  The ALJ must also consider RFC assessments made by acceptable medical sources and may consider opinions from other sources to show how a claimant's impairments may affect his or her ability to work.  20 C.F.R. § 404.1513(c), (d).  Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

### 1.     Application of the Treating Physician Rule

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

When controlling weight is not afforded to the opinion of a treating physician, the ALJ should consider the following factors to determine the proper weight to afford the opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 [2d Cir. 1998]). "Although the ALJ is required to explicitly consider all of the factors, the ALJ is not required to explicitly 'address or recite' each factor in his decision." *Reyes v. Colvin*, 13-CV-4683, 2015 WL 337483, at *16 (S.D.N.Y. Jan. 26, 2015); *see also Marquez v. Colvin*, 12-CV-6819, 2013 WL 5568718, at *12 (S.D.N.Y. Oct. 9, 2013) ("Although the ALJ did not explicitly recite the factors, his decision nonetheless adequately considered each factor[.]"). "If it is unclear whether the ALJ explicitly considered all of the factors, the court may search the record to assure that the treating physician rule has not been traversed, but only when the ALJ gives good enough reasons to allow the court to engage in such an inquiry." *Reyes*, 2015 WL 337483, at *16 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 [2d Cir. 2004]). Finally, the ALJ is also required to set forth his or her reasons for the weight that he or she assigns to the treating physician's opinion. *Id.*; *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw*, 221 F.3d at 134. "Failure to provide 'good reasons' for

not crediting the opinion of a claimant's treating physician is a ground for remand." *Reyes*, 2015 WL 337483, at *14.

In this case, on July 19, 2013, Dr. Michaels opined, among other things, that "Plaintiff cannot tolerate any work," can sit for zero minutes at a time and stand for zero minutes at a time, walk zero city blocks without rest or severe pain, needs to change positions at will, and can never carry any weight.[4] (Tr. 382-83.) Dr. Michaels further opined that Plaintiff had "no useful ability to function" with respect to the following: accepting instructions and responding appropriately to criticism from supervisors; asking simple questions or requesting assistance; working in coordination with or proximity to others without being unduly distracted; and making simple work-related decisions. (Tr. 384.)

The ALJ's reasoning in her decision, taken in the context of the facts in the record, demonstrates that she properly applied the treating physician rule in evaluating, and affording little weight to, Dr. Michaels' opinions. (Tr. 21-22.) The ALJ both expressly recited the regulatory factors and, as is evident from her detailed discussion of the other evidence in the record inconsistent with Dr. Michaels' highly "restrictive" opinions of Plaintiff's capabilities, applied those factors in her analysis. (Tr. 21-24.) As the ALJ noted (and as set forth in Defendant's memorandum of law), the degree of restrictiveness of Dr. Michaels' assessments was

---

[4] The Court notes that Dr. Michaels' opinion that Plaintiff "cannot tolerate any work" is, in essence, a conclusion that she is totally disabled and thus a statement on an issue reserved for the Commissioner and never entitled to controlling weight or special significance. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); SSR 96-5p, 1996 WL 374183, at *1 (July 2, 1996); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").

inconsistent with Plaintiff's function report[5] (which predated Dr. Michaels' opinions), Plaintiff's

hearing testimony[6] (which postdated Dr. Michaels' opinion), his own treatment notes,[7] the

medical records of Plaintiff's other treatment providers,[8] and the RFC assessments from state

---

[5]      In her function report, Plaintiff asserted that (1) her daily activities, depending on the severity of her vertigo, included washing and dressing herself, performing "small chores" such as cleaning dishes, washing laundry, raking leaves, feeding her dogs, preparing simple meals, and watching television, (2) she can walk for one hour before needing to stop and rest, and (3) her ability to lift, sit, climb stairs, kneel, squat, reach, use her hands, and hear were "unchanged." (Tr. 175-183.)

[6]      As Plaintiff notes (Dkt. No. 13 at 7), she testified at the hearing that she does not perform household chores if she has a migraine, and that, socially, she "prefer[s] to be [by her]self" due to her anxiety. (Tr. 52, 56.) However, Plaintiff also testified, among other things, that (1) she "get[s] along" with her family and a friend from high school, and is able to conduct herself in a socially appropriate manner, (2) she "can walk" (albeit with a "balance issue" that occurs "sometimes") and does not use a cane, (3) she has no trouble sitting or using her hands, arms, or legs, (4) she performs chores when she is not suffering from a migraine (including dishes, laundry, caring for her three dogs, and shopping at the grocery store when accompanied by her daughter), and (5) medications prescribed by her doctor were helping to alleviate and "control" her migraine-related pain and vomiting. (Tr. 50-53, 58-59.)

[7]      For example, in a treatment note regarding a visit on September 5, 2013, Dr. Michaels noted that Plaintiff was "doing great." (Tr. 478.) In a treatment note regarding a visit on September 30, 2013, for a "[m]ed [c]heck and [f]lu [s]hot," Dr. Michaels noted that Plaintiff had "no acute concerns" and, upon examination, had "strength 5/5 for upper and lower extremities." (Tr. 481.) The Court cannot conclude that the ALJ erred in finding that these treatment records were inconsistent with Dr. Michaels' opinion, rendered less than two months earlier, that Plaintiff could not sit or stand for any length of time or ever lift or carry any weight. (Tr. 383.) Moreover, the Court notes that, in a single-page note dated March 3, 2014, Dr. Michaels stated (by checking a box marked "Yes") that Plaintiff's limitations of function (as set forth in his July 2013 opinion) continued to the same degree. (Tr. 386.) However, as the ALJ observed, Dr. Michaels' September 2013 treatment notes suggest that his March 2014 assessment was not based upon a new evaluation of Plaintiff's capabilities, but simply "reflected the statements from his July 2013 assessment." (Tr. 22.)

[8]      For example, according to a treatment note from the office of Plaintiff's neurologist, Dr. Robert Todd, Plaintiff reported during a June 2013 visit that prescribed medications had proven "very effective" for preventing and treating her migraines, and that, in particular, Zomig "has her feeling better in less tha[n an] hour." (Tr. 332.) Moreover, Plaintiff reported that she "has not had any further issues with dizziness" since she had been prescribed a low dose of Synthroid. (*Id.*) A treatment note from Dr. Todd's office related to Plaintiff's follow-up visit on December 5, 2013, reflects that Topamax had been "effective in controlling her migraines" and that she had not "experienced any significant dizziness in well over a year." (Tr. 484.) Although Plaintiff expressed that she "continue[d] to struggle with anxiety and depression" and was experiencing some difficulty with "word retrieval and forgetfulness," an

agency reviewers.[9]  (Dkt. No. 14 at 9-12.)  The ALJ thoroughly reviewed the other evidence in

the record and explained her reasons for declining to afford Dr. Michaels' opinions regarding

Plaintiff's limitations controlling weight.  *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir.

2002) (noting that opinions of a treating physician "need not be given controlling weight where

they are contradicted by other substantial evidence in the record, [and g]enuine conflicts in the

medical evidence are for the Commissioner to resolve.");  *accord, Cichocki v. Astrue*, 534 F.

App'x 71, 75 (2d Cir. 2013) (summary order) ("[S]ince the ALJ comprehensively explained the

reasons for discounting Dr. Gupta's medical source statement, he complied with the dictates of

the treating physician rule.").  Accordingly, the Court concludes that remand is unwarranted on

this basis.

### 2.    Weight Afforded to the Opinion of a State Agency Review Physician

As noted above, Plaintiff argues that the ALJ improperly afforded great weight to "a non-

examining review physician" because the physician "did not review 12 [e]xhibits . . . and the

---

examination of Plaintiff during this visit revealed that she demonstrated fluent, logical speech,
intact extraocular muscles with no nystagmus, and a steady gait.  (Tr. 484-85.)  In February
2014, Plaintiff began vestibular physical therapy but, according to treatment records from her
physical therapist, she was discharged the same month because her "possible" history of right
peripheral vestibular hypofunction appeared to be "fully compensated," and she was able to
perform visual sensitivity exercises with no increase in symptoms.  (Tr. 401-03.)  Moreover,
Plaintiff's physical therapy records reflect that she had normal range of motion, strength, and
coordination in her bilateral upper and lower extremities, and, despite left beating nystagmus,
she "did not have dizziness in any positions" and tested negative for benign paroxysmal
positional vertigo.  (Tr. 402.)

[9]    State agency medical consultant Janet Forbes, M.D., reviewed Plaintiff's medical
records and assessed her physical functional capacity in light of her vestibular impairments.  In
her RFC assessment, dated February 1, 2013, Dr. Forbes opined that Plaintiff could do the
following: stand and/or walk for six hours and sit for six hours in an eight-hour workday; lift
and/or carry 20 pounds occasionally and 10 pounds frequently; and push and/or pull limited only
to the extent of the lift-carry restriction.  (Tr. 75.)  Dr. Forbes further opined that Plaintiff had no
postural, manipulative, visual, communicative, or environmental limitations.  (Tr. 73.)  State
agency medical consultant James Greco, M.D., concurred with Dr. Forbes' opinion.  (*Id.*)
Plaintiff raises no argument with respect to Dr. Forbes' physical RFC assessment.

bulk of the evidence." (Dkt. No. 13 at 7 [Plf.'s Memo. of Law].) As an initial matter, Plaintiff

does not identify the "non-examining review physician" who purportedly did not review record

exhibits in forming his or her opinion. (Dkt. No. 13 at 7.) Moreover, Plaintiff's argument that

the unspecified physician "did not review 12 [e]xhibits (Exhs. 9F-20F . . .)" is entirely

conclusory, and does not identify any particular record that the unspecified physician failed to

review in forming his or her opinion, or any basis for concluding that such a failure to review

undermines the ALJ's reliance upon this opinion. The conclusory and nonspecific nature of

Plaintiff's (counseled) arguments alone warrants their rejection.

In any event, it appears that Plaintiff is referring to the opinion of state agency psychiatric

reviewer M. Apacible, M.D., which was the only opinion to which the ALJ afforded great weight

and the only opinion of Plaintiff's mental work-related abilities and limitations in the record.

(Tr. 22-23.) Furthermore, it appears that Plaintiff intends to argue that Dr. Apacible did not

review (and could not have reviewed) any medical records or other record evidence that arose or

were generated after the date of Dr. Apacible's mental RFC assessment, March 21, 2013.[10] (Tr.

85.) In other words, Plaintiff appears to argue that Dr. Apacible's opinion regarding her mental

functional capacity is stale.[11] Again, Plaintiff does not identify any particular record evidence

---

[10] This inference is based upon Plaintiff's reference to "Exhs. 9F-20F," which comprise medical record exhibits dated (for the most part) after March 21, 2013, the date of Dr. Apacible's mental RFC. (Tr. 85.) In contrast, Exhibits 1F-8F largely comprise medical records from the alleged date of onset through January 2013.

[11] "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996).

that purportedly casts doubt upon Dr. Apacible's opinion.[12]

Granting Plaintiff's undeveloped argument the liberal construction outlined above, the Court concludes that the ALJ did not err in affording great weight to Dr. Apacible's opinion for the reasons set forth in Defendant's memorandum of law.  (Dkt. No. 14 at 10-14 [Def.'s Memo. of Law].)  To those reasons, the Court adds the following two points.

First, an ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of Social Security disability benefits.  20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e); *see also Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) (D'Agostino, J.) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute

---

[12]     In his mental RFC assessment, Dr. Apacible opined that Plaintiff was moderately limited with respect to the ability to (1) carry out detailed instructions, (2) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and (3) interact appropriately with the general public.  (Tr. 84-85.)  Moreover, Dr. Apacible opined that Plaintiff had the following: a mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation.  (Tr. 81.)  However, Dr. Apacible opined that Plaintiff was not significantly limited in her ability to (1) carry out very short and simple instructions, (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (3) sustain an ordinary routine without special supervision, (4) work in coordination with or in proximity to others without being distracted by them, (5) make simple work-related decisions, (6) ask simple questions and request assistance, (7) accept instructions and respond appropriately to criticism from supervisors, (8) get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and (9) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  (Tr. 84.)  Dr. Apacible concluded that, despite Plaintiff's psychiatric impairments, Plaintiff was capable of performing simple work.  (Tr. 85.)

substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

Second, the timeliness of evidence is merely "a *factor* that courts have cited in finding a lack of substantial evidence in the *record*," and does not necessarily compel rejection of a particular piece of evidence or the ALJ's finding relying thereon. *Abar v. Colvin*, 15-CV-0095, 2016 WL 1298135, at *6 (N.D.N.Y. Mar. 31, 2016) (Suddaby, C.J.) (citing *Jones v. Colvin*, 14-CV-6313, 2015 WL 4628972, at *3-5 [W.D.N.Y. Aug. 3, 2015] and *Acevedo v. Astrue*, 11-CV-8853, 2012 WL 4377323, at *16 [S.D.N.Y. Sept. 4, 2012] ["The timeliness of evidence is also a factor that courts have cited in finding a lack of substantial evidence in the record to affirm a decision on benefits by the Commissioner."]); *see, e.g., Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015) (rejecting plaintiff's argument that the mental RFC was unsupported because the ALJ improperly gave great weight to the allegedly "stale" opinion of a non-examining and non-treating state agency medical consultant; concluding that the ALJ did not err because, "although [the consultant's] opinion was based on only part of the overall administrative record, the treatment notes and opinions in the record before and after [the consultant's] opinion demonstrate substantially similar limitations and findings"); *cf. Suarez v. Comm'r of Soc. Sec.*, 09-CV-0338, 2010 WL 3322536, at *8 (E.D.N.Y. Aug. 20, 2010) ("[B]ecause Dr. Weiss's opinion is both outdated and inconsistent with Dr. Misra's more recent findings, the propositions which the ALJ relied on Dr. Weiss's opinion for when determining Plaintiff's RFC should not have been afforded substantial weight without further explanation."); *Pierce v. Astrue*, 09-CV-0813, 2010 WL 6184871, at *9 (N.D.N.Y. July 26, 2010) (Bianchini, M.J.), *adopted*, 2011 WL 940342, at *1 (Mar. 16, 2011) (Suddaby, J.) ("Because the ALJ's RFC determination was so

heavily based upon Dr. Scerpella's August 2005 assessment, it is flawed [in that] the record contains sufficient evidence to question whether that assessment was rendered stale by subsequent events.").

In this case, the Court cannot conclude that any record evidence postdating Dr. Apacible's mental RFC assessment rendered the RFC assessment stale; and, for this reason, the Court cannot conclude that the ALJ erred in relying upon the RFC assessment. Much of the record evidence at issue bore no relation to her mental functioning, and, as noted above, Plaintiff's psychiatric history predated her alleged onset date for purposes of her disability application.[13] Plaintiff does not identify any evidence suggesting that Dr. Apacible's mental RFC

---

[13] The record evidence that postdated Dr. Apacible's mental RFC assessment includes the following: (1) certain medical records related to Plaintiff's appointments with Dr. Michaels (a general practitioner) as well as his medical source statement, discussed above (Tr. 319-322, 357 [noting, on 5/6/2013, that Plaintiff was seen regarding her thyroid nodule and complained she was "still dizzy"], 382-90, 478 [noting, on 9/6/2013, that plaintiff had recently had her thyroid removed and was "doing great"], 480 [noting, on 9/30/2013, that Plaintiff had no acute concerns, and that she had "been seeing psychiatry in Oswego but doesn't want to go there anymore"]); (2) reports related to thyroid imaging and her thyroidectomy (Tr. 323-26, 351-56, 359-381, 411-459); (3) medical records from her neurologist, including a report that a transcranial doppler from April 2013 was normal (Tr. 327); (4) treatment notes from appointments with her neurologist (Tr. 328 [noting, in April 2013, that Plaintiff's dizziness and headaches were intensifying], 332-33 [noting, in June 2013, that Plaintiff's dizziness and migraines had both significantly improved with medication, that her speech was fluent and logical in content, and that her mental status was intact to general conversation], 484-85 [noting, in December 2013, that Plaintiff reported that "she has not experienced any significant dizziness in well over a year, but that she was experiencing anxiety and depression; further noting that Plaintiff was experiencing "difficulty with word retrieval and forgetfulness," and that her neurologist was prescribing "once a day extended release" Topamax "to see if that cuts down on any of her complaints"]); (5) an MRI report from April 2013 that reflects that her brain appeared normal (Tr. 338); (6) office treatment records from Syracuse ENT surgeons, including a February 2014 report related to an audiological evaluation (Tr. 391-95 [noting that Plaintiff presented with "dizziness" and, on examination, revealed "a pleasant female in no acute distress" with "appropriate affect and demeanor"]); (7) medical records related to her vestibular physical therapy, from which she was discharged (Tr. 399-403); and (8) progress notes from appointments with Oswego Hospital Behavioral Services Division on April 3, 2013 (Tr. 488 [noting that Plaintiff reported experiencing episodes of vertigo and migraines, but had not recently experienced hallucinations or feelings of depression]) and June 4, 2013 (Tr. 489 [noting that Plaintiff expressed "(n)o particular concerns"]).

assessment would have been different if he had occasion to consider the evidence that postdated his assessment, and Plaintiff does not argue that Dr. Apacible's mental RFC assessment was inconsistent with the record evidence that Dr. Apacible did review, including her psychiatric records from Oswego Hospital Behavioral Services Division.[14] (Tr. 286-294.) Moreover, the case record was complete at the time the ALJ issued her decision and, based upon the record, the ALJ concluded that Plaintiff had "*more* limitations in social functioning than Dr. Apacible opined." (Tr. 23 [emphasis added].) Accordingly, in determining Plaintiff's RFC, the ALJ concluded that Plaintiff's capacity to perform sedentary work was limited such that she could "only perform simple routine and repetitive tasks in a low stress environment that only has occasional changes in the work setting[,] involves occasional decision-making and judgment," and could "only have occasional contact with co-workers, supervisors, and the public." (Tr. 16.) As such, the ALJ appropriately accounted for the limitations identified by the acceptable medical sources of record in determining Plaintiff's RFC.

For each of these reasons, we as well as the reasons set forth in Defendant's memorandum of law, the Court concludes that the ALJ did not err in affording great weight to Dr. Apacible's mental RFC assessment, that the mental RFC assessment was not inconsistent with the record evidence, and that the ALJ's RFC determination was supported by substantial

---

[14] Plaintiff's medical records reflect that she was seen at Oswego Hospital Behavior Services Division for her "first appointment" with Dr. Vilas Patil on October 25, 2012, and that she reported that, in addition to her preexisting depression, she had also "been experiencing auditory hallucinations" for years, but had not revealed this fact to anyone. (Tr. 291.) Plaintiff was prescribed Klonopin and Risperdal, and subsequent records reflect that her hallucinations improved with medication. (Tr. 289 [progress note dated 11/8/2012, reflecting that Plaintiff's "episodes of hearing . . . voices" occurred "only intermittently" and "has decreased quite a bit"], 288 [progress note dated 12/4/2012, reflecting that Plaintiff's hallucinations "did come back" when she ran out of Risperdal "for a few days," but that, thereafter, the "hallucinations have subsided"], 286 [progress note dated 1/1/2013, reflecting that Plaintiff's dysthymic disorder was in remission, that Plaintiff denied experiencing hallucinations, and that her episodes of vertigo and migraines "are few and far between and she is functioning much better"]).

evidence.[15]  (Dkt. No. 14 at 9-14.)

### B.    Whether the ALJ Erred in Assessing Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the negative for

the reasons set forth in Defendant's memorandum of law.  (Dkt. No. 14 at 14-17 [Def.'s Memo.

of Law].)  To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by

objective medical evidence."  *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009)

(Mordue, C.J., adopting Report-Recommendation of Bianchini, M.J.) (quoting *Simmons v. U.S.*

*R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]).  However, the ALJ "is not required to accept [a

plaintiff's] subjective complaints without question; he may exercise discretion in weighing the

credibility of the [plaintiff's] testimony in light of the other evidence in the record."  *Montaldo v.*

*Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012).  "When rejecting

subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the

Court to decide whether there are legitimate reasons for the ALJ's disbelief."  *Rockwood*, 614 F.

Supp. 2d at 270 (internal quotation marks omitted).

---

[15]      The record also does not support Plaintiff's conclusory argument that, in weighing
Dr. Apacible's opinion, the ALJ failed to consider the factors set forth in 20 C.F.R. §
404.1527(d)(1) (providing that the Commissioner "[g]enerally . . . give[s] more weight to the
opinion of a source who has examined you than to the opinion of a source who has not examined
you") and (d)(6) (providing that, "[w]hen we consider how much weight to give to a medical
opinion, we will also consider any factors you or others bring to our attention, or of which we are
aware, which tend to support or contradict the opinion").  (Dkt. No. 13 at 7.)  In her decision, the
ALJ expressly acknowledged that, "[n]ormally, the opinions of non-examining medical sources
are entitled to less weight than the opinions of treating and examining sources."  (Tr. 22.)
Moreover, Plaintiff has not identified any other factor that the ALJ failed to consider and that
tends to support or contradict the opinion.  In short, the ALJ is not required to explicitly
enumerate all of the regulatory factors, and the record reflects that the ALJ considered the
relevant factors in her decision.  *Reyes*, 2015 WL 337483, at *16; *accord, Atwater v. Astrue*, 512
F. App'x 67, 70 (2d Cir. 2013) (summary order) (holding that, where a plaintiff challenged the
ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527[c], "no such
slavish recitation of each and every factor [was required] where the ALJ's reasoning and
adherence to the regulation [was] clear").

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 270-71 (internal quotation marks omitted).

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* at 271 (citing §§ 404.429[c][3][i]-[vii]) (internal citations and quotation marks omitted). Moreover, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki*, 534 F. App'x at 75 (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

In this case, Plaintiff argues that the ALJ (1) "applied none of th[e] factors" set forth in 20 C.F.R. § 404.1529 in weighing her credibility, but rather "merely used boilerplate language," and (2) erred in failing to afford Plaintiff substantial credibility in light of her "outstanding work history." (Dkt. No. 13 at 9.) Neither of Plaintiff's arguments compels remand.

Contrary to Plaintiff's first argument, the ALJ manifestly considered the applicable regulatory factors in evaluating Plaintiff's credibility. In her decision, the ALJ concluded that

Plaintiff suffered from medically determinable impairments (Tr. 17), but that, pursuant to "the factors described in 20 [C.F.R. §] 404.1529(c)(3), 416.929(c)(3) and Social Security Ruling 96-7p, there are several reasons why [Plaintiff's] allegations of debilitating symptoms should be deemed to be not wholly credible."  (Tr. 23.)  Among those reasons, the ALJ noted that (1) Plaintiff's hearing testimony and function report reflected that she engaged in daily activities–including washing and dressing herself and numerous chores–that were not consistent with her expressed disabling symptoms and limitations, (2) her medical treatment "has been essentially routine and/or conservative in nature, including medications and physical therapy," and (3) her most-recent medical records indicated that, upon examination, she was not in any apparent distress and had an appropriate affect and demeanor.  (Tr. 23-24.)  The ALJ concluded that the "overall record does not support the severity of" the symptoms alleged by Plaintiff, but rather "point[ed] to a remaining degree of functioning" sufficient to perform sedentary work with certain limiting exceptions, as set forth in the RFC.  (Tr. 24.)  Although that portion of the ALJ's decision expressly focusing on Plaintiff's credibility was somewhat brief, the ALJ thoroughly reviewed Plaintiff's medical records and testimony, and referenced Plaintiff's symptoms and treatment, throughout the decision.  (Tr. 13-21.)  Rather than repeat that discussion at length in the context of evaluating Plaintiff's credibility, the ALJ identified those portions of the record that were inconsistent with Plaintiff's subjective allegations, specifically, her hearing testimony, function report, the nature of her treatment history, and her more-recent medical records.  (Tr. 23-24.)  It is well established that "[a]n ALJ does not have to state on the record every reason justifying a decision[, and a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered."  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir.

2012) (internal quotation marks omitted). For these reasons, as well as those set forth in Defendant's memorandum of law, the ALJ's decision, taken as a whole, amply supports the conclusion that the ALJ considered the relevant factors in determining Plaintiff's credibility.

With respect to Plaintiff's second argument, the ALJ's decision reflects that the ALJ was aware of, and considered, Plaintiff's work history. (Tr. 17 [noting that, according to medical records, Plaintiff attempted to return to work in August 2012 but "gave up her job" a short time later due to headaches and dizziness], 24 [discussing Plaintiff's work history and concluding that Plaintiff is unable to perform past relevant work].) "Although it is true that 'a good work history may be deemed probative of credibility,' it remains 'just one of many factors' appropriately considered in assessing credibility." *Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012) (summary order) (quoting *Schaal v. Apfel*, 134 F.3d 496, 502 [2d Cir. 1998]). As outlined above, the ALJ reasonably relied on other record evidence in assessing Plaintiff's credibility, and, in light of that evidence, the ALJ's determination that Plaintiff's allegations were not wholly credible is supported by substantial evidence. *See Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011) (summary order) ("[T]he ALJ was well-aware of Wavercak's 17-year employment as a warehouse worker for a food distributing company, and considered this in the disability analysis when he concluded that Wavercak's RFC for light work prevented him from performing the medium demands of his past warehouse work. That Wavercak's good work history was not specifically referenced in the ALJ's decision does not undermine the credibility assessment, given the substantial evidence supporting the ALJ's determination.").

"It is the function of the [Commissioner], not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of*

*Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (quoting *Carroll*, 705 F.2d at 642) (internal quotation marks and alteration omitted).  Accordingly, the Court must uphold an ALJ's credibility determination where, as here, it is supported by substantial evidence.  *Aponte*, 728 F.2d at 591.

> **C.**      **Whether the ALJ Erred with Respect to Her Step-Five Determination**

After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendant's memorandum of law.  (Dkt. No. 14 at 17-18 [Def.'s Memo. of Law].)  Plaintiff's only argument with respect to the ALJ's step five-determination is that the hypothetical questions posed to the vocational expert were based upon an erroneous RFC determination.  (Dkt. No. 13 at 10 [Plf.'s Memo. of Law].)  However, for the reasons discussed above in Parts III.A. and III.B. of this Decision and Order, the Court concludes that Plaintiff's arguments with respect to the ALJ's RFC determination lack merit.  Plaintiff has therefore identified no basis upon which to conclude that the hypothetical questions posed to the vocational expert were improper or that the ALJ's step five determination was erroneous.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **<u>AFFIRMED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: December 5, 2016
       Syracuse, New York

                                    Hon. Glenn T. Suddaby
                                    Chief U.S. District Judge